Council, Ms. Capps, Bullitt, trading us out on Foreign Selection Clause and Franchise Agreements and everything else, right? Good morning. May it please the Court. My name is Lene Capps and I represent the appellates in this case who are the plaintiffs below, SGIC, Grill, and Mr. Christian Gronka. This case presents two issues for this Court to decide. First, whether BKE, Burger King Europe, as I'll refer to them in oral argument and it's how they're referred to in the briefs, waived the Foreign Selection Clause from the Franchise Agreements at issue. And the second issue is whether the District Court abused its discretion when it found the plaintiff's motion for leave to amend was moot based upon its ruling on the Foreign Selection Clause. The appellants in this case assert that both issues should be decided in favor of the appellants and that the District Court's memorandum of opinion should be reversed and the case should be returned in its entirety for trial in the merits. The appellants assert that both the standard of review and the facts of this case warrant reversal and remand, but because I have limited time today, I would like to focus my argument on the issue of the Foreign Selection Clause, and if this Court has any specific issues about the motion of leave to amend, of course, I'd be willing to answer those, but we're going to rely upon our briefs on that second issue for right now. We may end up asking you something about it, but go ahead. Of course, Your Honor. Before you get into that, and really just a few seconds, why are you setting that one aside? It seems to me that's a pretty strong argument not to suggest anything to the appellee on the amendment. Do you think it's thoroughly sufficiently expressed in your brief? I think that it is such a strong argument, Your Honor, that it's so clear that the Court abused its discretion. Once you look at the issue that we had to be given the ability to freely amend under Rule 15a, that by just dismissing it as moot and not even addressing the issue, when Burger to Miami was a new party, was going to be amended, and that we had independent tortious interference claims and disparagement claims against that entity. Okay, you've gone far enough. I'm not trying to make you make the argument. Go ahead with the way you want to do it. We think that, at a minimum, it would have to be reversed on that issue, and we would effectively suffer a summary judgment, or 12b-6, without even getting the opportunity to amend prior to the pleading deadline. With the issue of whether BKA waived the forum selection clause, I would like to start at the outset that the appellants assert that the relief that we're seeking is neither extraordinary nor does it change the precedent in this circuit as to the enforceability of forum selection clauses. It doesn't ask this Court to set outside of its prior precedent or the precedent of North American specialty, because what that case said is that a party can waive a right either from an intentional relinquishment of that right or conduct that is so inconsistent with that right, the waiver should be found. So in this case, what we are asking the Court to do is simply look at the express language of Burger King's own contracts, which it drafted, and its own conduct and dealings, both in filing the guarantee lawsuit and the pre-litigation behavior that Burger King Europe engaged in that was directed towards Texas, the appellants, and the Northern District of Texas, which the district court found in its underlying opinion was sufficient to assert personal jurisdiction over Burger King Europe, but nonetheless, the district court enforced the forum selection clause. So the appellants contend that the analysis of the issue of whether BKE waived the forum selection clause begins with the examination under de novo review of the language in the forum selection clause, in the franchise agreements, the language in the guarantee, and the actual complaint that BKE filed in the Northern District of Texas. By BKE's own admission in its briefs and in the motion to dismiss for forum nonconvenience that it filed in the district court, BKE admitted that all the franchise agreements have the exact same boilerplate language. But do we have the same franchise agreement here, or do we have two different contracts? If your honors question if whether the guarantee letter agreement and the franchise agreements are different documents, the answer is yes. The appellant's contention is that they can't be addressed separately or divorced from each other as part of the legal analysis that the district court was required to undertake. And by grasping on the concept of the letter agreement guarantee being a separate document, it's a legal false construct that ignores Burger King's own forum selection clauses. And the best way, I believe, for me to address your honors argument is to go through that language and how we contend and how we've set forth in our briefs that they work together such that Burger King's conduct was, in fact, a waiver. Now does it waive it for all restaurants? If you waive it for one, you waive it for all? To the extent that there was a dispute between the parties relating in any way to the franchise agreements, their application, or their termination, yes. And both the guarantee lawsuit and the spa purchase agreement lawsuit both involved the their application and their termination. So even if it were different restaurants, you filed that one lawsuit, then you waived it on all the other restaurants? As to the lawsuit they filed, yes, your honor. And as to the lawsuit we filed, yes. Arguably, if there was some fortuitous circumstance where there was a slip and fall with a German franchisee and some indemnity claim, maybe not. But on the record before us, in the dispute between these two entities and Mr. Gronkow, yes. And this is why, your honor. And the fact that there are different restaurants is a distinction without a difference, which Burger King has focused on in its briefing, and which I believe the district course latched upon to, because the guarantee is tied to the franchise agreements itself. And the franchise agreement says, the exclusive venue for any dispute, any dispute, arising out of this agreement, the franchise agreements, its application or its termination shall be in Munich. That was in German. It stated German law applies, and it was actually written in German in the franchise agreement. In the same vein, the letter of guarantee is not a stand-alone document. By focusing on that it's a letter of guarantee, the court failed to conduct a complete and proper analysis. I believe when this court conducts them to never review shows that Burger King waived the form selection clause. That guarantee, which is our record at section 8, states, and again it's in German, signed in Germany, and in Switzerland. And it stated, what Mr. Gronke signed said, according to the German civil code, I, Christian Gronke, at my Berlin address, hereby guarantee directly the fulfillment of obligations of the respective franchises arising from the franchise contracts. So the guarantee lawsuit, and what he guaranteed was whatever those obligations were that arose from the franchise contracts, and the form selection clause dealt with any dispute arising from the franchise agreements. And again, both under German law, both governed by German law, both in German. And Webster's dictionary defines arising from as originating from a source. Well, what was the source of the guarantee lawsuit that Burger King Europe filed? The source was the underlying alleged obligations of the franchisors in Germany to pay franchise fees. And if you examine BKE's complaint, which was filed in the Northern District of Texas, which is contained in the record, it's replete with references to the fact that although they're suing on the guarantee, they know they have to show that there's an underlying breach, that the German franchisors have failed to pay allegedly franchise fees. And that's what they're seeking to recover. In their complaint, which although they characterized it as a brief one count complaint, I understand their argument. But when you look at what they're actually seeking, it's a claim that arises from the franchise agreements and disputes arising from the franchise agreements had exclusive venue in Munich. And their complaint states just that. It is contained in our record excerpts, and I would direct the Court to paragraphs 23 to 26. So when it says arising out of franchise agreements, are you saying it applies into any franchise agreement or to that specific franchise agreement that you're reading? Your Honor, the record is clear that all the franchise agreements are form franchise agreements written by Burger King, and they all have the exact same language. But whether they're forms or not, then, are you saying one applies to all the others, or each one is looked at individually? I mean, it's a separate contract. Whether they're a form or not, each one is a separate contract. As to their claim for the restaurants that they claim owed franchise fees, which was the basis for the guarantee suit, those all had the exact same franchise agreements with the difference of various stores and maybe some other terms that might have been changed. But generally, they all vested exclusive venue for all disputes arising out of those agreements, their application or their termination in Munich. You say arising out of, what does the rest of the clause say? It states the exclusive venue for any dispute arising out of this agreement, meaning that franchise agreement or the franchise agreements, its application. It doesn't say agreements. It says that agreement. This agreement, yes. And all of the franchisees had the same form selection clause and almost identical agreements. In fact, Burger King relied upon the declaration of their in-house counsel, Mr. Dahl, as the basis for the motion to dismiss or form nonconvenience, who made exactly that assertion. And, in fact, they didn't even put all the franchise agreements in the record and only relied upon an excerpt based upon his representation that they were essentially form contracts, and they all said the exact same thing. Let me see here. So if you look at Burger King's complaint, their assertion is that the defendant guaranteed the obligations of the franchisees in their respective franchise agreements and that the franchisees had failed to perform those obligations. And so the underlying claim arises out of the franchise agreements, and that guarantee case was filed in the Northern District of Texas, and by doing so, Burger King waived the ability to assert that form selection clause. So per your argument, I mean, you know, the appeal is from the judgment, not from the reasons. So per your judgment, presumably, all this was argued to the district court. So where are you saying she got off track? Not looking at this identical language? What? Yes, we argued that by filing the guaranteed lawsuit that the form selection clause had been waived and that they had invoked the jurisdiction of the court such that the guaranteed lawsuit arises out of the form selection clause. We've got these ton of cases that say, you know, waiver is not likely, you know, surmised, et cetera, et cetera. We've got a bunch of cases, so which I'm sort of drilling down from your argument, which you say is the controlling case in terms of waiver. I mean, we've got a lawsuit filed, but nonetheless, we've got to see a case law that speaks to, you know, waiver is not easily, you know, da-da-da-da-da-da-da. So where are you saying this sits that the district court missed on the legal point? Your Honor, where I'm saying it sits is squarely within North American specialty, which is this circuit's law, which states that, yes, waiver will not be filed lightly, but there can either be an intentional relinquishing of a known right or conduct so inconsistent with the right that waiver can be found. And you're saying filing the lawsuit is so inconsistent? I think that's inconsistent, but here's the very important part, and I would like to make sure I address this before my time is up. Go ahead. We're not rushing through this one. The district court looked through a litany of correspondence, which Burger King Europe was sending to the plaintiffs in Irving, Texas, to Texas residents, claiming it was going to unilaterally terminate the franchise agreements in Texas. Again, termination is one of the words in the franchise agreement. Claiming that the application of the provisions of the franchise agreements required their consent and making other positions with my clients, the corporate entities and Mr. Gronkow. Those letters are also conduct inconsistent with invoking or standing on this form selection clause, and the court found that that conduct was directly directed at Texas residents such that the court could assert personal jurisdiction over BKE. And the court found that it did have personal jurisdiction, and they didn't cross the field of personal jurisdiction issue. But the reason why this is important is if you look at the Kettler case, and I understand that's not controlling precedent on the circuit, but I do think it's illustrative of the analysis. The court looked at the letter correspondence between Starbucks and Kettler and said, you're sending all these letters back and forth, talking about the agreement, talking about terminating it, talking about indemnity, talking about whether somebody complied with it, and nowhere in there did you say, but once we get to a legal proceeding, I'm going to assert it in Washington. Nowhere in the record did Burger King ever say, but if we ever get to a legal proceeding, we're going to assert it in Munich. It was only after they filed the guarantee action and we filed our lawsuit that they then wrapped themselves and tried to cloak themselves. But in our recollection, in Kettler, Starbucks brought the claims under the same contract in both the lawsuits. Isn't that different than what's here? The contract, it was actually a contribution and an indemnity claim. So one claim was, and one was a common law right under that case. But our argument here, Your Honor, is that this false construct that Burger King has created, that somehow the guarantee stands by itself, and that they didn't try a case in the Northern District of Texas where we had to try the underlying obligations of whether these franchise agreements had been breached. They've created a false construct to try to keep the entire argument focused on the guarantee and divorcing it from the underlying form selection clause and their own conduct with regard to the guarantee lawsuit and the SPA lawsuit. All right. So what's the principal case you rely on, North American Specialty? Is that in our clerical line in terms of reversing the district court? Your Honor, I am relying upon North American Specialty. I think that it adequately states the issue of waiver, although that was an issue with an insurer. The majority of the cases briefed by both sides are either unpublished opinions or opinions of the district court. There just isn't a lot here except for what we do know in the circuit is that even if they didn't intend to actually relinquish, that their conduct can evidence that they did. Well, you know, my problem, well, not the only one, but, you know, not so much the movement targets here, but you read each case, there's just a little bit of a nuanced difference. So when you're trying to lay one case over the other, you know, it's a little tricky, you know, to say exactly what, and that's why I'm sort of honing in, not minimizing the argument you're making at all in the brief or otherwise, but getting my head around it. I always just sort of start with the district court, okay? Well-able, you know, it's one of our best trial judges, doesn't mean you can't make errors, but typically the judge, it's not because, you know, she didn't understand, she wasn't paying attention, et cetera. So I always assume the parties make these same arguments, you know, to the learned trial court, et cetera, point out the cases, et cetera. So there in my inquiries, whether in Oregon, you know, that we vacate, reverse, send back, and I say, you know, okay, so where did the trial judge go wrong? Was she looking, was she not construing, was she following her own case law, or whether she was not, as you're arguing, viewing that there was sufficient inconsistent conduct here to demonstrate the waiver, so, you know, it was an error of law in terms of her reading of the cases that you would argue is the basis that our panel should reverse or was she missing something in terms of not looking at a document that's in there? That's what I'm trying to drill down and say, where did the trial judge go wrong in terms of leading her to the reasoning that she gave? You follow what I'm saying? May I answer your question? Yeah, absolutely. I think that if the issue of waiver was dealt with in about a page and a half of the court's lengthy memory and opinion, and our position is where the very honorable district judge erred, was that we believe that she drew that line, that if there's a guaranteed letter agreement that references the franchise agreements but doesn't have its own form selection clause on the second page, that that ended the inquiry, and she adopted the legal argument by Burger King Europe that that was the end of the inquiry, that if they brought suit allegedly on just that one document, that legally that was the end of the analysis. Okay. Okay. That's fine. And I mean, I know that counsel's office is going to address this. That's why I want to get out on your own direct. So on rebuttal, you'll have ample opportunity to respond to that, and we'll see if we get to the amend or not. Okay. Thank you much. All right. Mr. Joblove, is that correct? Exactly. Yes. I don't think I've seen that name. That is unusual. Is that the real name or that's a Hollywood name? You know, I'll tell you. It just seems like great lawyer, I would tell you. Come to Michael Joblove. I had a young lawyer candidate interviewer from when she said, she said, is that really your last name? Where is that from? I said, you know, it's just a stage name. I don't even work here. I go from firm to firm, and I recruit. But, no, it's a real name. It's a real name, and it is unusual, and I usually hear about it when I check into hotels a lot and things like that. We will delete it from the recording of the case. It's fine. Curious. Good morning to all of you. May it please the Court. I'm curious about whether there are different ingredients in a German hamburger versus an American hamburger. I mean, do you put sauerkraut in it, or is it basically the same thing? A little bit of a Wiener schnitzel with a lettuce tomato on it. I don't know. No, actually, the recipes are the same. For the most part. All right. Now that we have that out of the way. I'm just curious. There's no precedent addressing that issue, the recipes in Germany. So, good morning, Your Honors. Mike Jablow on behalf of Burger King Europe, the appellee. I'm going to touch upon the lower court's decision to dismiss based on form not convened, and I will on the motion to amend. I hear, I sense, I perceive that there are questions. I understand that issue that you probably ought to address. I understand, and I will. And so, let me focus first on the motion to dismiss in the court's ruling on the issue of form not convened. We are talking about two, well, we are talking about two different kinds of agreements and multiple different franchise agreements. So, the first case that was filed as between the parties in connection with this dispute was Burger King's case in the northern district of Texas, not on a franchise agreement, not on any of franchise agreements, but simply on a guarantee. And that guarantee, as everyone recognizes, had no form selection clause. The defendant was in Texas. We sued the defendant, the guarantor, Mr. Bronke, in Texas, where he resides, as were permitted. And there was no agreement between the parties as to what form would be required or mandated in any dispute involving the guarantee. And so... Did that guarantee relate to the franchise agreements? I mean, were they in conjunction with each other? Can you really separate the guarantee from the franchise agreements? They are different agreements with different parties, right? So, one point I want to make is this. The Bronke case involved a failure to pay in about 20 different  Each franchisee, there were different corporate entities that signed those franchise agreements on behalf of the franchisees. All of them were different. There's no overlap between any of the franchisees or their particular franchise agreements that were used to evidence a debt in the Bronke case and the franchise agreements and franchisees and parties to this case. There's no overlap. They are all different franchisee entities. There are individual different German entities for each of the 20 restaurants. In the appellant's papers, they claim initially that the guarantee assumed the franchise agreements that created the principal debt, right, that was owed to Burger King. And that's not correct. The guarantee does not assume the franchise agreements. It simply says, as you've heard, as Ms. Capps mentioned, that Mr. Bronke guarantees all of the obligations arising under those franchise agreements and other franchise agreements relating to entities that he owned directly or indirectly and that operated Burger King restaurants in Germany. So, we sued in the Northern District of Texas because there was no forum selection clause. And so, let's talk about the legal principles, right, that the outcome of this portion of the court's opinion. One is, in this case, on these different franchise agreements, we have mandatory forum selection clause that require that any dispute be heard in Munich. And we know from the U.S. Supreme Court's decision in 2013, Atlantic Marine, as well as the earlier decisions by the Supreme Court of the strong public policy to enforce those provisions absent extraordinary circumstances in the Supreme Court's language. And the Supreme Court, in that decision, sets forth the private and public policy considerations, the analysis that a court is to perform in considering whether to honor or transfer a case based on grounds of forum nonconvenience. And the appellants don't challenge any of that analysis by the district court. Their only issue is whether the district court erred in not finding waiver. Now, waiver, under Texas law, is you have a right and you knowingly intended to relinquish it, right? That's what the North American decision that Ms. Capps just mentioned states. And by the way, that's not a forum selection case. It simply states what are the general principles for waiver. In all of the cases in which waiver was found, in which it was found to have a dispute considered in a particular forum and knowingly waived that right, in all of those cases, including Kettler v. Starbucks, one of the parties to that very contract with a forum selection clause sued somewhere else. And later, when it attempted to invoke the forum selection clause, was found to have waived the right to insist on adherence to the forum selection clause. That's not what we have here. We don't have a contract, the guarantee. It's not an artificial contract. It's a legal construct, right? The law recognizes these as two separate agreements or multiple separate agreements. But we didn't, there is no case that comes to the conclusion that they're asking of you. And that is where some parties to a separate contract with no forum selection clause were held to have waived a right to have another dispute heard in a particular forum because they filed suit in one forum on a contract with no forum selection clause. There's no, you ask, Judge Stewart, you ask, what was your best case? What's the case you really want us to look at? That's the North American case that was mentioned to you. It's not a forum selection case. It simply tells us what the elements are of waiver. So there's no case like this one. Does not the personal guarantee relate to the franchise agreements, though? Can you do one without the other? Don't they kind of go in conjunction with each other? I can sue on the guarantee without suing on the franchise agreement. And when we brought our claim, it was simply for breach of guarantee against Mr. Gronke. Now, I need to produce evidence of the debt. These agreements are evidence, right, of an obligation. Of some other parties, none of whom are parties to this case, who owe Burger King royalties and other fees. So we put the franchise agreements in evidence to show, hey, this is how royalties are calculated. And then we put a witness on the stand and said they didn't pay us. But we also put the guarantee in and evidenced the demand on Mr. Gronke and the fact that he didn't pay those debts. But, yes, you can divorce them as we did. We didn't sue on the franchise agreements. We didn't sue the franchisees. We had an independent guarantee as an independent instrument. And you can sue a guarantor without suing a principal obligor, and that's what we did. We made our independent claim. Now, as I said, there's no case like the one, like this one, where a court finds waiver, right, on a form selection clause. But there are multiple cases, and we cite them in our papers, where the courts hold our way. And those are cases like the CSX case from the Middle District of Florida, CSX transport, as well as the Bancroft Life case from the Southern District of Texas, both where one party sued on a contract or document or obligation that had no form selection clause and on another claim later sought to invoke the franchise agreement. And the courts in those decisions all found no waiver because, like here, the contracts sued on or the claims made did not depend upon the underlying document. So, really, it's as simple as that. Now, they do bring up the language, so I'll touch on it, of the franchise agreement, this question of what does it mean arising under, so the form selection clause in the separate franchise agreements with different corporate entity parties, in this case, mandates Munich for claims arising under the franchise agreements. So I want to call this Court's attention to its decisions in the Wim versus Jack Eckerd case, as well as the, oh, I know there's another case, where this Court construes VETCO sales, where this Court, and these are arbitration cases, but they talk about what are the words arising under mean. And this Court, in its opinions, distinguishes between words like arising under and words like related to, in connection with, you know, arising here under, to hold that the language of this guarantee is narrowly construed. And so, as this Court said in, I'm sorry, it's the Penswell case and the VETCO sales case, as this Court said in its Penswell decision, clauses that extend to disputes arising out of a contract are construed narrowly and means, and the Court said in VETCO sales, this means that they cover disputes that literally arise from the contract. In other words, claims made on the contract. So were we to have sued in Munich, the arising under language would have mandated dismissal of the case, because we weren't suing under these franchise agreements. Our claims were made on the guarantee. So, if there are no questions, I just do want to emphasize, again, although, you know, I'll make our strongest point here. Our strongest point here is that the guarantee has no form of selection clause, and there's no case like the one they would ask this Court with a decision that they're asking this Court to reach. So, if there's no questions, I want to touch on the motion to amend. Well, it's, you know, I hear you. I read the brief. Spent a lot of time trying to get my head around this. I don't know. There's just something about either the not explicit expounding by the trial court. I don't know. Something about the ruling that, I don't know, just gives me some dissonance about, you know, these are the same agreements, the waiver and all that, that, of course, bears, you know, just close scrutiny. You make it sound, you know, incredibly straightforward, which worries me a little bit. Trying to read all these cases together. I mean, I got you. I looked at Bancroft, you know, life. That seems to have, you know, a line of reasoning. She's arguing Kettler, and I looked at Kettler, and it looked like to me it was a little bit different. That's why I said these cases, there are nuances, you know, of differentiation, like you're arguing, you know, North America isn't a foreign selection clause case, and then you just argued a case that was an arbitration case. So I'm saying, you know, it's a little murky in the law because none of them are, you know, franchise agreements with foreign selection clause, so we bar in these principles out of cases that are not the same, but, you know, I don't want to say sort of cherry-picking the principle of law. So, you know, it's a little bit of a yield sign to not want to just accept all embracing this is what drives it because, by definition, you know, you cited an arbitration case. They're not foreign selection. So what's the driving case from your side of the podium that is a foreign selection clause case with franchising agreements that beckons for affirming the district court's judgment here? So that's a pretty narrow set of facts you gave me, and so that narrow road is not there, but let's talk about in some broad principles, and I don't mean to go through it quickly, even as we go through it slowly and around the circle past the yield sign, I think we would get to the same result. One, we have a strong public policy of enforcing foreign selection clauses. Two, waiver requires an intentional relinquishment of a known right. We didn't have the right. This guarantee had no foreign selection clause. Three, the key decisions are, and there's no... The closest we can get are the decisions we cited, so Bancroft Life, right? So the plaintiff in that case is an insurance company, and they loan money to the defendant to finance insurance premiums, and the defendant signs promissory notes reflecting that debt, and the promissory notes have no foreign selection clause, and there's a suit on the promissory notes, and the defendant, the insured, counterclaims claiming a breach of an insurance contract, and the suit that was brought by the insurance company and the notes was brought in Texas, in the Southern District. The defendant counterclaims and says, you breached the insurance policy. Those clearly were related, right? Just like this case. You wouldn't have had the promissory notes if you didn't have the insurance contract. The promissory notes were insuring the premiums due under the contract. The defendant counterclaims, the insured counterclaims, said you breached the insurance policy. The insurance company invokes a foreign selection clause requiring that the litigation be heard in St. Lucia, and the Southern District of Texas found that there was no waiver, because just like here, the promissory notes had no foreign selection clause. Again, just like here, there's some relation, right? There's no notes without the policy. There's no premiums to finance unless you bought the contract, and the amount of the premiums due are set forth in the insurance contract, and so that case is very similar to this case. We also cite CSX Transport. It's not a franchise... These are not franchise cases, but it's really contract law that's key here, and there's nothing particular about the franchise fact. So there, the plaintiff filed an action in Florida, in Duval County, in the Jacksonville area, for breach of a credit agreement, as required by the agreement's foreign selection clause. The defendant sought dismissal of that case, claiming that the plaintiff had waived the right to litigate in Duval County, because it had earlier... And these involved freight charges. It was a contract to move freight by train through the distribution system for the benefit of the defendant. The defendant in the Duval County, Florida action said, you waived your right to sue here when you sued me in Connecticut for certain freight charges that were due under a statute. And there again, the court held, well, the claim under the statute didn't involve a foreign selection clause. And certainly, those freight charges presumably arose as a result of the contractual relationship, because the claim involved one where there was no foreign selection clause. The Middle District of Florida held that there was no waiver. So I think those are the two best cases. The best case they cited was Kettler, and Kettler v. Starbucks. But there, that was one of those cases that I was talking about where Starbucks made an indemnity claim on a contract in California against a chair manufacturer and claimed that this was a personal injury action where Starbucks was sued. Third party's in, the manufacturer, saying the plaintiff's injuries are your responsibility. Later, the manufacturer sues in Virginia to bring a DAC action for the court to determine who's responsible under the contract. Starbucks says, wait a second, we have a Washington State foreign selection clause in our contract. Same parties, same agreement, unlike here. Same party, same agreement. And the court in Virginia held, the Eastern District of Virginia held, that in fact, Starbucks waived the Washington foreign selection clause when it made a claim under that same contract, not a different contract, under that same contract in California. So we have to look as close as we can get based on the facts, but really keep in mind the overriding principle as instructed by the U.S. Supreme Court that these foreign selection clauses are applied except in the most extraordinary of circumstances. So let's talk about the motion to amend. The court's order denying the motion to amend is denied as moot. The court does provide a reason, and there are some cases from this court that indicates a preference for a more explained opinion than perhaps the one provided here. But we did cite to this court in our briefs other district court cases where the court's denied as moot motions to amend complaints brought in connection with a case where the court determines that there is another forum in which the dispute ought to be heard. And so there's the Vanderham case out of the Southern District of Florida and the Fregado shipping case. Both cases denied motions to amend where cases were dismissed on forum nonconvenience. Now, let's talk about why that makes sense, right? We... the court's decided that the parties have contracted to have this dispute heard in Munich. The plaintiff... the plaintiffs here seek to amend their complaints on the eve of the ruling on the motion to dismiss. They filed their motion to amend around seven or eight... Uh, no. They filed their motion to amend ten months after they filed their lawsuit on facts that they knew about at the time their lawsuit was filed. But they were still within the scheduling order time. They were. It would not have been dilatory. Well, in the Wynn v. Jack Eckert case, it's a decision of the Fifth Circuit, all right? It's a 1993 decision. The court was faced with a very similar issue. So in that case, the plaintiff... the plaintiff would bring a claim against their child who was, uh... I understand. I read Eckert. But my point is, in this instance, though you said ten months later, it was still within the scheduling order deadline. It was not on its face. It wouldn't have been untimely. And, you know, our cases say you can deny it if it would be futile. So the court doesn't make a futility, uh, you know, ruling. Uh, you know. So unless you are in bad faith or something else, uh, you know our case law as well as I do in terms of, you know, allowing to amend. So just meeting you where you are there in terms of some of the usual bases. You know, it would have been untimely. Yada, yada. This is not one where somebody has previously proposed an amendment. Uh, you know, it's been shot down. Or otherwise, it's noted in front of the court. Well, your second one isn't any better than what you did the first time, so therefore you're out. So against that backdrop, the district court denied based on mootness, which suggests that maybe the district court did not view the differentiation in these agreements that you're arguing and felt like, well, the Foreign Selection Clause and all that were in it strictly tied to them all, therefore I just ruled, uh, you know, my first ruling, so that carries the other one out. I mean, that's the thing. You follow where I'm going? Yes, sir. So two quick things. One, in the Wynne case, the Jack Erkert case, the court noted that, uh, the plaintiff in that case argued that the time for amendment hadn't expired yet. And this court says that, uh, Wynne and Spears counsel argued that the district court abused its discretion by denying their motion because they filed it eight months in advance of the district court's deadline for amendment of pleadings. Wynne and Spears argued that they were entitled to rely on the district court's deadline. However, they cite no authority which supports the proposition. And so, one is, the court below here was correct to find it moot. It involved all the same transactions. There were many complaints, and their motion to amend says, our amendment arises from the same facts and transactions as the original complaint. And so the court, in deciding that the case should be transferred, did not abuse its discretion, which is the standard here, in determining that it was moot, any more than in the other cases that I cited. We've also cited... Even with the amendment, the form non-convenience clause would have applied? Absolutely. Absolutely. It's all the same, it's all the same claims. It's all the... You're arguing now for a much broader reading of a rising-under than you were arguing earlier when we were trying to say that the guarantee suit was different. It seems to me this is a business. Part of the new claim was business disparagement. Right. Which is at least... I can't finish. Why don't you take the fact that it was business disparagement? Isn't that a... The fact that it's a tort, isn't that at least a distinction? So the business disparagement claim still arises in connection with the franchise relationship. Like a personal guarantee might? No. Like it all gets down to whether we had the right to sell. It all arises under their attempt to sell under a share purchase agreement and the fact that as they allege in their amended complaint that Burger King was essentially trying to make the market in some fashion, diminish the price that they could fetch, let's say, by disparaging them. That's the allegation there. So I'm not trying to broaden the scope of anything. I'm simply saying... Not beyond what's necessary. Well, no really, I'm not. I mean, it's... They've added perhaps two or three paragraphs and the claims all relate back and still, the claims they still attempt to maintain are for tortious interference, declaratory judgment, the same claims, and they've added a business disparagement claim. So the court could have determined it was moot very quickly. We cited cases where I believe this court and others at the circuit level have held that were reasons for denial or apparent from the record. Then it's not an abuse of discretion for the court to deny amendment. And so what was apparent from the record, just as in the Wim v. Jack Eckert case, that case, the parties in the Wim case, they sought to amend six weeks after the case had been filed in the face of a motion to dismiss that had been filed. And so the question is whether it was fair for the district court to find that there had been unreasonable delay on the parts of the appellants here by waiting ten months after the lawsuit was filed to seek amendment, waiting rulings of the magistrate on the jurisdictional discovery issues before seeking amendment, and seeking amendment like in Wim, in the face of a motion for summary judgment, seeking an amendment on the eve of a ruling of the dismissal of this case. And so this case is very much like Wim in the construct that it would allow for a conclusion that they were dilatory and that they were simply trying to preserve jurisdiction somehow at the last minute, fearing a ruling on the court's motion to dismiss. May I make one other quick thing? They talked about letters that went from our client to Texas. This is on the form non-convenience argument. That's just mixing jurisdictional questions with form non-convenience questions. The court found that Burger King, by sending letters to Texas, had engaged in activity that would allow it to be subject to the jurisdiction of the court in Texas, but it has nothing to do with form non-convenience or the enforceability of the clause. All right. I don't mean to... I guess strategically there's some advantage to having some disputes in Berlin and others in northern Texas. It seems to me they're all kind of related to the Burger King franchises and paying those, and it would be good to have them all at one forum. I was there. I'm the guy who's been through this. We would have preferred to sue in Germany because Mr. Gronke lives in Texas, so in the guarantee claim we sued him in Texas. You know what? We had six witnesses at trial. Five were from Germany. We needed a translator. Everyone was flying in experts. Witnesses. One witness in that guarantee case from Texas. Five from Germany. All of this involves German restaurants. The business people are in Germany. It's a big advantage. The advantage is even Mr. Gronke's employees who operate the restaurants are all in Germany. There's no strategic advantage. We'd prefer to have been there, but we didn't have a forum selection clause. Mr. Gronke lives in Texas, so we sued there. All right. Appreciate it. Thank you. Appreciate it. All right, Mr. Kapsch. You got rebuttal and a lot of room to roam. Yes, I do. Just to address the issue that Mr. Jopla raised, if you actually look at the letter agreement and the franchise agreements, they're both in German. Mr. Gronke signed it in his capacity as a resident of Berlin and he maintained business offices in Berlin. They have asserted in their briefs that they couldn't have sued Mr. Gronke or sued him in Germany. That's just something they say in their briefs. It's belied by the actual documents that they drafted and the forum selection clause that they drafted and the invocation of the German code and Mr. Gronke's address in the guarantee, which is written in German, which we've translated for the court. So that can't be the explanation for their behavior as to why they waived their right. Why they sued Mr. Gronke in Texas only they know, and it was a strategic decision on their part, but they did it and it has consequences. Now, it's interesting that Burger King said that there are very few things that are very straightforward about this case, but here's something that is, and I think it's really important in the record. In the guarantee case, they asked to recover attorney's fees. The right to recover attorney's fees only arose out of the terms of the franchise agreements themselves that allowed them to recover them under German law, and they in fact sought that relief and obtained it. So their separation, their theory of divorce doesn't carry water with the actual positions that they took in the Northern District of Texas and the case that was actually tried. And they say in their brief, it is irrelevant that as part of the breach of guarantee claim, the amounts owed under the separate franchise agreements needed to be proven. This court must accept that legal reasoning that the case that they tried and that they had to prove an underlying breach and they had to prove the franchisees owed the obligations eviscerates and can be separated and divorced because there's a separate letter agreement that Mr. Gronkow signed, and again, the letter agreement, the guarantee, said that he was guaranteeing the obligations of the franchisees arising under the franchise agreements. And so the distinction of whether it arises to or relates to is also irrelevant because we stop at arising and they tend to parse all of these different, and there are very different waiver of arbitration and waiver of selection clauses, that they try to get at a very granular level and say, well, this is an arising and it's not a relate to and it's more causally connected and it's very much narrow in scope. But we don't have to get there because arising from according to Webster and Smates, its origin is from, well, the origin of the guarantee case originates from the franchise agreements that have the forum selection clause. And so we don't have to parse whether it's an arising to or related to because we're already there with the very exact terms that Burger King selected and we're already there with the exact same contracts that they drafted. But your response to counsel opposite's reliance on the CSX transportation case and Bancroft, which were both cases where no waiver was found. And I would like to address that too in the public policy argument if I can. The CSX case was very factually distinctive. You actually read the case and we distinguished it in our brief. The first filed action was on a federal statute. And so the court came in in the middle district of and I'm not even going to consider whether that involved the contract and I'm not going to address that because that was different. Here we have a guarantee which on its face to be sued on is that Mr. Gronkow was guaranteeing the underlying franchise agreements so they're already intertwined and there's no separate cause of action. But the public policy issue that he talked about is really important here and I think that your honors have recognized that Burger King's has one aspect of it that's incredibly expansive and one aspect that's incredibly narrow. So their narrow interpretation is that the guarantees unrelated to franchise agreement and they didn't do any waiver. But if you look what they argued to the district court and what the district court accepted was that they argued that the forum selection clause was so broad that even precluded the dismissal of the Texas entity's claims under the theory of direct benefits estoppel. And then they argued in response to the motion to dismiss that our claims against Burger King Corporation, a separate entity based in Miami, were also foreclosed. And they actually in their briefing argued to the district court well of course those go with the form not convened too because this form selection clause is so broad it just scoops up everything. So on the one hand they're arguing that the scope has to be narrowly construed that they possibly couldn't waive it. But when it benefits them and they don't want to be defendant in the Northern District of Texas it has to be read as expansively as possible even to the extent that it eviscerates our ability to amend our pleadings prior 30 days prior to the scheduling order with no prior attempts to amend. I'll give you three minutes on the clock to wrap up that part and then also to address the amendment amendment issue. Yes. And Your Honor, I would just to be clear direct the court to Besperto Oil. It is a Fifth Circuit opinion it is not controlling authority under this court's local rules. But that is an example of some of these other form selection cases where somebody tries to artfully plead and say something well this is outside the scope and well this is really fraudulent inducement or this is conversion and the contract had ended and we cited all those cases in our briefs and that's what we're trying to do here and the courts have looked at it and said no it falls within the scope this was the intention of it. I think there's a question that the district court aired when it denied our motion for leave to amend under this court's precedent amendment must be freely given we asked to amend not only to further refine our claims but to assert a direct claim against Burger King Corporation for business disparagement. That's an independent tort and in the record is a PowerPoint presentation from Burger King Corporation in Miami in which they disparage Mr. Gronka and some of his affiliated entities. Well wasn't the case about to go to judgment you'd had the ruling on foreign non-form selection clause so it seems to me the case law that your opposing counsel was talking about is very much on point. It's one thing to say a schedule order hadn't closed yet but something else to say the case was over all but and then here on the eve of being sent to Munich you come up with some new so doesn't that weigh heavily on whether the district court maybe needs to explain herself but maybe it was not an error. I don't think that does your honor and this is why first of all as underlying trial counsel we didn't know when the decision was coming down so we were doing our due diligence in deciding when we were going to amend and felt that we were within our rights under the scheduling order. There's no evidence that we didn't act as soon as we could there's no evidence of delay there's no evidence as they argued in the district court the amendment would be futile and we didn't know when the court was going to rule. We were simply on a dual track system with two different cases and doing what we needed to do in that case when we thought that we had additional cases but again the court's analysis is finding that it's moot had to hold erroneously and adopted Burger King Europe's argument that somehow Burger King Corporation itself also who was not a signatory to the franchise agreements was a separate legal entity was somehow fell within this broad scope of the form selection clause such that it didn't even have to answer or be subject to the process of a 12B6 or a motion for summary judgment which is at a minimum what we were entitled to be instead of just having our claims thrown out on the principle of mootness and so on this record and particularly the arguments that were put before the district court as to why we shouldn't amend there's no support under the controlling case law for any of those findings by the district court in fact the district court by finding mootness in a docket entry and not a separate order implicitly was applying the Form 9 Convenes analysis to those additional claims and has inter-ability to amend Don't you have to win on the first argument in order for us to conclude that there was an abuse of discretion on the amendment in other words if as you just said she was of the view that the earlier ruling on foreign selection clause pretty much takes care of it all ergo no need to independently rule on the rest of this because it's not clear to me she knew about the rest of what you just said about you know filing a different claim etc. etc. but her comment is relating to the pendency of these other matters so seems to me you've got to prevail on the first argument you're making about waiver or not and the different agreements in order to get into the well of abuse of discretion or not on the amendment is that a fair characterization? If I may answer your question your honor I think that at a minimum that the district courts decision to dismiss the ability to amend the claims against Burger King Corporation of Miami would at a minimum have to be reversed and remanded because the issue of whether Burger King Corporation fell within the forum selection clause of independent tortious claims against them for interfering with the contract with the third party that was never briefed or decided by the district court that that was fully enveloped within the forum selection clause for Burger King Europe. Is that within the scope of this appeal? I think that it is implicit in the court's opinion that she must have found that was in there. I would still say to me boilerplate law is the appeal is from the judgment not from the opinion of the district court. I mean we affirm cases all the time on any basis that the record allows. It is helpful for the district court to tell us and of course we have cases that say if the district court doesn't give explicit reason but Horton Booker's appeal is from the judgment so she's dead right on the judgment even if she didn't say it correctly you lose and so that's kind of why this burned down. I mean again it's not unimportant what she says and that's why I said well is it the case that in order for you to prevail on this amendment business you've got to prevail on the first part of the argument about waiver the indestructibly intertwined franchise agreement because if you're just over here arguing she abused the discretion by not letting us to amend because we had a new claim blahdy blahdy blahdy just seems like that doesn't have a lot of force in light of the amount of time that's gone on in the case as Judge Southwick alluded to you know perhaps this case is about to end and that doesn't I don't remember getting that in the briefs what you're saying now that there's some independent basis of it you follow what I'm saying? I mean it just looks to me like I do your honor the court's order only said that it was on mootness which directly followed its ruling on form nine convenes we did appeal that order on mootness and brief the issue that we thought that the court couldn't reach that conclusion based upon the briefing that was before the district court on the motion for leave to amend alright well thank you give me a little extra time obviously it's a tricky little case to put it mildly so we're just trying to make sure we understand what's said in the briefs correctly and that we understand the governing legal authority that you're each of which has got a little bit of a divot in it so we want to make sure that we understand what you're arguing particularly in terms of the case law here but we'll like the rest of them take a real hard look at it and figure it out I just want to say something if I may I think answering questions quickly I said that the motion to amend had been fought only 6 weeks after the case that's not correct it had been fought about 8 or 9 months I just want to correct that duly corrected candid to the court is greatly appreciated however dilatory it may be but nonetheless we appreciate it you're keeping us from our burgers but thank you to both counsel for the briefing we'll figure it out that concludes the orally argued cases for the morning the panel will stand in recess until